UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLIE JONES,<br><br>  Plaintiff,<br><br>  v.<br><br>Y. MAGALLON,<br><br>  Defendant. | **CASE NO. 1:15-cv-01897-DAD-MJS (PC)**<br><br>**ORDER REQUIRING PLAINTIFF TO EITHER FILE A SECOND AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS AGAINST DEFENDANT MAGALLON**<br><br>**(ECF NO. 21)**<br><br>**THIRTY DAY DEADLINE** |

Plaintiff Hollie Jones, a prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on December 21, 2015. (ECF No. 1.) He has declined Magistrate judge jurisdiction. (ECF No. 5.)

On September 27, 2016, the Court screened Plaintiff's first amended complaint. (ECF No. 16.) Finding certain claims to be cognizable and dismissing the rest, the Court directed Plaintiff to file an amended complaint or a notice of willingness to proceed only on his cognizable claims. Plaintiff's second amended complaint is before the Court for screening. (ECF No. 21.)

## I.  Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.  Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III.     Plaintiff's Allegations

Plaintiff, who is currently housed at California State Prison in Corcoran, California, complains of acts that occurred at the California Substance Abuse Treatment Facility ("CSATF"), also in Corcoran. He brings this action against Medical Clinic Officer Y. Magallon, Nurse S. Thomas, Nurse Practitioner L. Merritt, and Drs. N. Kandkhorov and Jane Doe. His allegations may be summarized as follows:

In September 2014, Defendant Dr. Kandkhorov prescribed blood pressure and diabetes medications for Plaintiff. Plaintiff stated he did not wish to take them.

On January 27, 2015, Plaintiff had an appointment with Defendant Merritt, during which he told her that he did not want to take the blood pressure and diabetes medication prescribed by Defendant Dr. Kandkhorov. Merritt disregarded Plaintiff's wishes and prescribed him the medications. That same day, Plaintiff saw Defendant Dr. Doe and stated he did not want to take the blood pressure and diabetes medications he had been prescribed. That doctor refused to discontinue Plaintiff's prescriptions.

Between September 2014 and March 20, 2015, Plaintiff signed several forms indicating his refusal to take these medications. During that time, Plaintiff was harassed by medical staff because of his cane, and Plaintiff overheard comments made by Defendant Thomas about Plaintiff's cane. Defendant Thomas had an "attitude" towards black inmates because of 602s filed against her and because she worked with another doctor to have black inmates' medical devices (such as canes and wheelchairs) taken away because "black inmates had too many weapons on the yard." On one occasion Defendant Thomas interrupted Plaintiff while he was speaking with a doctor and said she hoped all of the inmates killed themselves.

On March 20, 2015, Plaintiff signed a form stating he would refuse all medical treatment until further notice.

On March 23, 2015, Defendants Magallon and Thomas called Plaintiff to the medical clinic. When Plaintiff arrived, he was met by both Defendants. Plaintiff told Magallon that he had signed a form stating he did not want any medical treatment and

told her to stop harassing him. Magallon became aggressive and tried to lock Plaintiff inside the clinic and block Plaintiff from leaving. Magallon hit Plaintiff in the left side of his ribs with her arm repeatedly, knocking the wind out of him. Plaintiff tried to leave. Magallon pushed and choked Plaintiff and shoved the back of Plaintiff's hand into the cell bars, and told him to get his "black ass" down. Thomas approached holding an unknown object and told Magallon to lock the door. Plaintiff had just managed to wedge his cane in the doorway and squeeze the right side of his body through when Magallon tackled Plaintiff to the ground. Plaintiff was taken to administrative segregation ("ad-seg") and charged with battery with a weapon on a peace officer. When Plaintiff's cane "came back up," Defendant Thomas confiscated it.

Plaintiff states Defendants violated the Equal Protection Clause of the Fourteenth Amendment when they discriminated against him on the basis of his diabetes and his status as "ADA." He also claims Defendants violated his Fourteenth Amendment right to refuse unwanted medical treatment, and subjected him to excessive force, in violation of the Eighth Amendment, and retaliation, in violation of the First Amendment. Plaintiff seeks compensatory and punitive damages.

**IV.   Discussion**

**A.   Right to Refuse Medical Treatment**

Plaintiff states that Defendants violated his Fourteenth Amendment right to refuse medical treatment. Cruzan by Cruzan v. Dir., Mo. Dept. of Health, 497 U.S. 261, 278 (1990) (A "competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment."). In order to determine whether Plaintiff's right to refuse treatment was violated, the Court must balance Plaintiff's "liberty interests against the relevant state interests." Cruzan, 497 U.S. at 279. Specifically, the Court must consider "the need for the government action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm." Plumeau v. Sch. Dist. No. 40, 130 F.3d 432, 438 (9th Cir.1997) (quotation omitted); see also Jacobson v. Massachusetts, 197 U.S. 11, 24-30

(1905) (where the Court balanced an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing the disease).

The treatment Plaintiff reportedly refused was intended to treat high blood pressure and diabetes. Balancing Plaintiff's liberty interests against the relevant state interests of safety and security, Plaintiff has sufficiently pled that he had a right to refuse this treatment.  However, nothing in Plaintiff's complaint suggests that he actually took the prescribed medications or that any Defendant attempted to forcibly administer the treatment. It appears that at most, Defendants continued to issue Plaintiff prescriptions for medications he did not want. The mere issuance of these prescriptions does not rise to the level of a constitutional violation. The Due Process Clause protects against unjustified *intrusions* into the body, Benson v. Terhune, 304 F.3d 874, 884 (9th Cir. 2002). Plaintiff's Fourteenth Amendment Due Process claims on the basis of his refusal of medical treatment will be dismissed. He has previously been advised of this pleading deficiency and did not correct it.  No useful purpose would be served in again granting leave to amend.

### B.     Eighth Amendment Claims

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted).  For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013).  The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503

U.S. at 9-10) (quotation marks omitted); <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002).

Prison officials also have a duty to take reasonable steps to protect inmates from physical abuse. <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994). Thus, a "prison official can violate a prisoner's Eighth Amendment rights by failing to intervene" to protect the prisoner from harm. <u>Robins v. Meachum</u>, 60 F.3d 1436, 1442 (9th Cir. 1995). To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." <u>Farmer</u>, 511 U.S. at 837; <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1313 (9th Cir. 1995).  However, to prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. <u>Farmer</u>, 511 U.S. at 842.

Plaintiff alleges that Defendant Magallon began hitting, pushing, and choking Plaintiff after Plaintiff refused medical treatment. She also blocked the clinic door and tried to lock him in when he attempted to leave. Defendant Thomas, in turn, told Magallon to lock the door when Plaintiff tried to leave. Taking Plaintiff's factual allegations as true, as the court must at this stage of the proceedings, Plaintiff has alleged, in essence, that Magallon became angry with Plaintiff and began to assault him simply because he exercised his right not to take medical treatment. Alleging such a wholly unprovoked attack sufficiently pleads a cognizable Eighth Amendment claim against Defendant Magallon.

As to Defendant Thomas, it is alleged only that she told Magallon to lock the clinic door while she approached holding an unknown object. Plaintiff does not suggest that Thomas herself used any force, much less excessive force, against Plaintiff.  If Plaintiff seeks to sue Thomas for failing to stop Magallon's attack, he has not alleged facts indicating Thomas was in a position where she could and should have stopped the

attack. <u>Farmer</u>, 511 U.S. at 837. Plaintiff will be given leave to amend to assert facts showing a failure to protect.

### C. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985). To make an Equal Protection Claim, an inmate must show either that Defendants intentionally discriminated against him on the basis of his membership in a protected class, <u>see</u> <u>Hartmann</u>, 707 F.3d at 1123; <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir. 2005), or that he received disparate treatment compared to other similarly situated inmates and there was no rational basis for that difference in treatment. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

Plaintiff claims he was discriminated against because of his diabetes and "ADA" status. These conclusory allegations are insufficient to state a claim. Furthermore, while he states generally that Defendant Thomas had an "attitude" towards black inmates, he fails to show how she or any other Defendant intentionally treated him differently from other inmates because of his race. Plaintiff's Equal Protection claim will be dismissed. He will not be given leave to amend.

### D. Retaliation

It is well-settled that § 1983 provides for a cause of action against prison officials who retaliate against inmates for exercising their constitutionally protected rights. <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 n. 4 (9th Cir. 1995) ("[R]etaliatory actions by prison officials are cognizable under § 1983.") Within the prison context, a viable claim of retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his constitutional rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord* <u>Watison v. Carter</u>, 668 F.3d at 1114-15; <u>Silva v. Di Vittorio</u>, 658 F.3d 1090, 1104 (9th Cir. 2011); <u>Brodheim v. Cry</u>, 584 F.3d at 1269.

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce, 351 F.3d at 1289 (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, the right to refuse unwanted medical treatment is constitutionally protected. Cruzan, 497 U.S. at 278.

With respect to the fourth prong, the correct inquiry is to determine whether an official's acts "could chill a person of ordinary firmness from continuing to engage in the protected activity[]." Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006); see also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d at 532.

Here, Plaintiff states that when he refused medical treatment, Defendant Magallon immediately began assaulting and restraining him. There is no indication that such force was necessary to advance any legitimate penological interest. Plaintiff has alleged sufficient facts to state a claim for retaliation against Defendant Magallon.

As for Defendant Thomas, if Plaintiff can allege sufficient facts to show that Defendant Thomas could have intervened to stop the attack but failed to do, he may be able to allege that Thomas' failure to intervene was in retaliation for Plaintiff's refusal to take his medication. As yet, however, Plaintiff fails to state a claim for retaliation against

Thomas.

### E. False Charges

Plaintiff alleges he was placed in ad-seg after he was falsely charged with battery on a peace officer. His complaint is silent on the procedures afforded him during the hearing, if any, on this disciplinary charge.

"The Due Process Clause does not provide a guarantee that Plaintiff will be free from fabricated accusations." Saenz v. Spearman, No. CV-1:09-00557-GSA-YNP, 2009 WL 2365405, *8 (E.D. Cal. July 29, 2009). Rather, the Due Process Clause protects prisoners from being arbitrarily deprived of a liberty interest without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Hewitt v. Helms, 459 U.S. 460, 466 (1983). The prisoner must next establish that the prison failed to meet the minimal procedural requirements before depriving him of that interest. Wolff, 418 U.S. at 556. In the prison disciplinary context, the minimum procedural requirements that satisfy due process are as follows: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

As Plaintiff was not previously advised of the deficiency in this pleading, he will be given the opportunity to amend if he believes, in good faith, that he can state a claim for the denial of procedural due process.

## V.    Conclusion

Plaintiff's second amended complaint states cognizable claims against Defendant Magallon for excessive force in violation of the Eighth Amendment and retaliation in violation of the First Amendment. It states no other cognizable claims.

Plaintiff has not previously been advised of the pleading deficiencies in his procedural due process claims arising out of the false disciplinary charges. He also was not previously advised of the elements of a failure to intervene claim. Therefore, he will be given an opportunity to amend these potential claims **only**. Plaintiff has previously been advised of the pleading deficiencies in his Equal Protection and refusal of medical care claims, therefore he will **not** be permitted to renew these claims in his amended complaint. If Plaintiff amends, he also may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding only on the claims found to be cognizable, he may file a notice informing the Court that he does not intend to amend and he is willing to proceed only on his cognizable claims. The Court then recommend the non-cognizable claims be dismissed and Plaintiff be provided with the requisite forms to complete and return so that service of process may be initiated.

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77; Starr, 652 F.3d at 1205-07. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be

"complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a blank complaint form along with a copy of the complaint filed January 13, 2017;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
    a. File an amended complaint curing the deficiencies identified by the Court in this order, or
    b. Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed only on the claims found to be cognizable in this order; and
3. If Plaintiff fails to comply with this order, the Court will recommend this action be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   January 30, 2017                    /s/ *Michael J. Seng*
                                             UNITED STATES MAGISTRATE JUDGE

11